This video shows the process of making a BLDG, which can be used for a variety of purposes.  I assume all those exhibits are relevant to interpreting the agreement that we have before us. That is correct, Your Honor. Next case is number 06-1139, Dinesol BLDG Products v. Tapco Intl Corporation. Mr. Sadowski. May it please the Court, Jeff Sadowski, Howard and Howard. I'm from Bloomfield Hills, Michigan. The Court should reverse this case for several reasons, not the least of which is the procedural morass that we're in. We don't really know the standard that the Ohio court used in determining this motion that was filed after judgment and was filed after the Michigan court case was filed, which makes it the second filed case. And so even under the principles of comedy, this case should be, if it is remanded, it should be remanded back to Michigan. But did the judge view this case as a summary judgment? We don't know. Did the judge view this case as a preliminary injunction? We don't know. The Kokanen case that we indicated in our briefs, in the Kokanen case, the U.S. Supreme Court said that motions for post-trial enforcement of settlement agreements should be separate lawsuits filed as a separate complaint. That was not done here, in which case that would clearly make this the second filed case under the comedy rules. And then under the various cases that have come to this court and to the Sixth Circuit, there was always a case where they always, in this circumstance, would have come to the court from the Michigan case side, like the Forry case in the Sixth Circuit and the various cases in the Court of Appeals for the Federal Circuit, where either a preliminary injunction or a summary judgment motion was ruled upon in that Michigan, what would be the Michigan side of the case here, and then that was appealed to the court, and then you could evaluate the standards of review, whether it was a summary judgment or whether it had the preliminary injunction fact findings. Here, we have another anomalous case, another anomaly of this case, is that neither side is arguing that the fact findings that were made are correct. Mr. Sadowski, in this settlement agreement, there's a paragraph about jurisdiction that establishes that the court in Ohio retains jurisdiction of this action for enforcement of this final settlement agreement. What did you have in mind in terms of procedure when you put that in this agreement? We agreed that we would submit to jurisdiction if jurisdiction was not in evidence. Say they couldn't get jurisdiction any other way other than that paragraph. That paragraph is in the Forry case where it was adjudicated in another jurisdiction. So there you are. You'd prefer to have this re-decided in Michigan, but there you are under that clause for whatever reason. For whatever reason. And in the Michigan case, they, on a counterclaim and in affirmative defenses, asserted this release against us in the Michigan case. So this is at issue in the Michigan case. It was at issue in the Michigan case before the motion was made in the, I guess it was the same day. They filed them the same day, different times of the day, as the motion was filed in the Ohio case. But in any case, I'm saying that under the principles of comedy that the Michigan case was the first filed case. Regardless of where it goes back, I think it needs to be remanded because the procedure is just... Has the Michigan court acted yet on the assertion of this agreement as a defense? The Michigan court just stayed the whole case. So this court acted first on the issue? Yes, you could say that. That's correct. So in terms of comedy, C-O-M-I-T-Y, not C-O-M-E-D-Y, this court has acted and the Michigan court has stayed its hand. That's correct. So what's the problem? Well, the comedy is usually determined by the first filed case, not the first action. But at this point... Well, Ohio was certainly the first filed case. Not with respect to... Involving shutters. Not with respect to the product at issue. And that's what we need to get into with the exhibits. I encourage you to proceed to the substance. You're running very short of time. The exhibits to my right there, the green and the red, were the products at issue in the case. The case was a trade dress case. Those products are made from a single mold. They're made in one piece. They're made in multiple sizes. I think 12 to 15 sizes. Those are the products that are advertised on Defendant Dinosaur's website. Those are the products that existed at the time of the settlement agreement. Those are one piece shutters? Those are all one piece shutters. The settlement agreement refers to both one piece shutters and custom shutters as well. Appendix page 182, the second whereas clause, second line. TAPCO has alleged that it owns trade dress rights in its custom and one piece paneled and louvered cathedral plastic shutters. Right. And TAPCO did have a custom shutter at the time. So custom shutters were involved. Only with respect to the trade dress. And only with respect to the TAPCO custom shutters. There were no Dinosaur custom shutters. The Dinosaur custom shutter, in fact, the only evidence that is in the record, and what I have in my hand here is Deposition Exhibit 3 from the Michigan case, the annotations on here were made during the deposition exhibit. But you're not claiming, I mean, you're contending that you alleged in the lawsuit that you had trade dress rights in custom and one piece shutters. Right. And you asserted that those rights were being infringed. Right. Are you telling me that the lawsuit was limited in terms of the defendant's products to just the one piece shutters and that your claim would not have extended to, or you would not have insisted that your claim extend to trade dress violations of the custom shutters as well? There were no custom shutters in the Dinosaur product line at the time of the lawsuit. In fact, the only evidence that they're relying on to try and beat the date of the settlement is that they rolled out a new product, this being the new product. They talked to two or three different customers in private conversations. There was absolutely no way we could have ever known at that point in time. We did not find out about the fact that they even had a custom shutter program until February of the following year, in which we tried to purchase, and this is all in the record, we tried to purchase this product and it took us over a month to get the product. The point is that even if we have this product, if we see this product on the house, we don't know that it's an infringing patented product or that it infringes any of our patents. We actually have to get the patent, get the product, take it apart and evaluate how the pieces fit together in order to determine whether it infringes any of our custom shutter patents. The only patent product that was involved in the lawsuit was a mount block product, which I hold in my hand here, and this product was patented and was resolved in an earlier settlement agreement, which was referenced in paragraph three of this settlement agreement. When we refer to patent claims, these were the patent claims that were at issue in that lawsuit. Would you explain as directly as you can how in fact the appropriate interpretation of that agreement is to exclude the products which are now at issue in view of the breadth of the language that's been written now or hereafter, conceived or not conceived, foreseen or unforeseen? It says here that the parties hereby mutually waive release, etc., and discharge each other from and against any and all claims, actions, etc., in law or equity or otherwise, whether known or unknown, foreseen or unforeseen, arising out of, resulting from, growing out of, or anyway connected with, or which could have been part of the filing of the claims, or arising out of the allegations asserted in TAPCO's claims of trade dress infringement. And the district judge said that if you really intended to exclude such an obvious evolution, that's not his word, but that it should have been excluded rather than the breadth of this language. What's wrong with that? We don't have, it's not an obvious evolution in the sense that there are dozens of companies that only sell standard products, standard sized shutters. That is the principal shutter in the marketplace. The custom shutter is the exception in the marketplace. It fills in all the gaps. Those are sold in, like I said, about 12 different sizes. The custom shutter will not only fill in the gaps of the height, but it will fill in gaps of the width, as people suggested. Just really to pursue this, your patent doesn't say that TAPCO claims all custom shutters. No. So that in itself is narrowed by definition. That's correct. However, there were no exclusions for any of those patents. Apparently they were all listed. I recognize the response to an interrogatory whereby you list all of your patents doesn't put them into a license format. However, the district court placed the burden of being sufficiently explicit on TAPCO and said that that burden was not met, that they were entitled to assume that they were home free. Well, the mutual release was only related to the claims of the trade dress infringement. The first paragraph of it. The second paragraph says, notwithstanding the fact that Dinosaur TAPCO may hear after discovered facts, in addition to or different from those which are known or believed to be known with respect to any and all claims of patent and trade dress infringement, this being the patent infringement, that being the trade dress infringement, Wait, wait, wait. You're reading limitations into this agreement that don't appear. It says any and all claims of patent and trademark infringement, not only those claims specifically identified in the complaint. Right. And we have evidence in the record that says that it was the intent of the parties from our standpoint that custom shutters were not part of this. And from their standpoint, we have evidence in the record that on the standard size shutters, they met all the limitations of the settlement agreement. They labeled the product. They put dinosaur building products on the back. On the custom shutter, they didn't do that. So there was intent in the record, even from their side, which indicated that they didn't think that this was part of the settlement agreement. Now they're backing off on it. The Supreme Court in U.S. v. Armour has addressed the question of how to construe and interpret settlement agreements and makes the observation that where parties are involved in litigation, where they're represented by counsel, where legal issues are clearly the subject of the discussion and the parties set out to resolve that by settlement, that there's no reason not to construe that strictly by its terms and within the four corners of the document, giving full recognition to the fact that this is a resolution of a matter in dispute. And what's wrong with the district court's interpretation of this agreement literally by its terms? Well, there's two things wrong with it. One, the terms, the intent of the parties controls the terms of the settlement agreement, and the intent of the parties is stated, at least from the TAPCO perspective on AO 183, where we say that this is intended to settle the trade dress rights and whether protectable trade dress rights exist or do not exist. That's the final settlement agreement. That's what this is intended to do. The patent, the only mention of patent in the whole agreement is with regard to the Wal-Mart products in paragraph 3. But they say they don't agree with that. So they say the intent is to settle everything. And then they point to the language, everything that may arise in connection with shutters. And then they point to the settlement agreement itself, and lo and behold, that's just what it says. It says, the second part of that paragraph, the second paragraph of 4, though, says, and Dyson and TAPCO and each of them intend to and hereby forever settle and release any and all claims arising out of or relating thereto without regard to subsequent discovery or existence of additional or different facts pertaining to the claims, pertaining thus such claims. I guess there's an error there, but pertaining to the claims. That's not the only error in this agreement. It's not a model of clarity. I agree, Your Honor. But, I mean, what claims does that refer to? That's the claims that are in the lawsuit. Where does it say that? All claims of patent and trade dress infringement, now or hereafter. That goes back to the, you know, the intent of the parties on page A0183. Wait a second. Why doesn't it go back to the language that appears three or four lines above it in the text pertaining to such claims? Such claims being any and all claims of patent and trade dress infringement, et cetera. You could say arising out or relating to. It seems to me all you could argue is that these don't arise out or relate to what's already in litigation. That's correct. That's my interpretation. That's also an interpretation the district court thought otherwise. Right. And also the second aspect of that is that this release cannot apply to products that are not already available to us to see. Then why the now or hereafter if you intend to exclude unknown future products? Because the now or hereafter are facts relating to the claims that predated the case. So we, well, I've reserved my additional time. I can get back to this. We'll save your rebuttal time and let's hear from the other side. Okay, thank you. Good morning, Your Honors. Mr. Rothenbuchen. Good morning, Your Honors. The exhibit should be the release. And what the release is has two parts as was pointed out. One is the prospective part, the second part, which is consistent with a may have type language. Specifically when it says dinosaur may hereafter, excuse me, TAPCO may hereafter discover facts. And if they're different and if they're different based upon and they create a patent infringement claim, that's nonetheless released. So what you have here is a connotation. But it does say arising out or relating to the issues that are in litigation. How could a product be in litigation if it doesn't yet exist? It doesn't. Your Honor, the factual record showed that it did exist. So that goes back to the first one. You have testimony or the factual record shows there was testimony. They were being openly sold. Well, that raises a much closer question there, doesn't it? Because as to whether they knew, perhaps you knew it existed, but whether they knew it existed and that it made at least a credible statement that they didn't know and that therefore the fact that it wasn't explicitly excluded from the settlement agreement is not so illogical. But for the Augustine medical case that this Court has done where they've addressed a similar type of defense, Your Honor, where they said, I was unaware of the fact that this product was out there, this claim was out there. And this Court said, you know what, if you look at the agreement and the agreement talks about- Those are different facts. Let's talk about this. Okay. What's appropriate in straightforward contract interpretation. In this scenario then, Your Honor, you have facts that show that the product, the shutter, the custom shutter was being made. This release talks about allegations relating to that claim. It was reasonably undisputed that it was not yet on the market, at least on the open market, or at least not made known in this litigation. If we take the interpretation, but we also have to realize it was their largest customer for whom this product was being shown at 100 different centers around the country. The record shows that they were told by the customer that we were making custom and standard shutters, and indeed they know they were selling custom and standard shutters to this client for whom we were replacing. So just from a factual standpoint alone, it's not clearly erroneous for the district court to have determined, based upon that set of facts, that they should have known- But they didn't know that they were within, at least prima facie, within the scope of the patents. Apparently custom shutters such as this are not brand new to architecture. Exactly. Here's where it comes. The threshold for purposes of filing a claim for patent infringement is higher than the threshold for preserving a claim for purposes of the release. So they knew that there were custom shutters out there. They admit that they knew that there were custom shutters out there. If they know, according to traffics also from this court, that utility patents are something that you have to look at to determine if trade risk is viable, what you see then, Your Honor, is that you have patents, custom patents, that this court would have had to look at to see if those claims are viable for trade risk, making it from a legal perspective a patent infringement claim potential. And as we know under the statute, offering something for sale is enough to trigger a patent infringement claim. Given the fact that they're no stranger to litigation, the duty befell upon them then to carve it out. They were on sufficient notice, as this court has pointed out in Augustine Medical, whether facts are different or not. It is said if you are on sufficient notice of the claim, you need to satisfy that lesser threshold. You need to carve it out. The duty doesn't fall upon us to disclose it. Are the patents in the Michigan complaint the same as the patents in the Ohio complaint? They are different, but they were disclosed in the Michigan complaint, but they were not the subject of the litigation, which again goes to Augustine Medical. They weren't asserted by Tocco. That's correct. Yes, Your Honor. They were disclosed only in response to your discovery request. Correct. They were disclosed in response to discovery. That doesn't necessarily make them involved in the litigation. Well, to the extent, Your Honor, again, it may not be that they're necessarily involved in litigation, but we have to think of the lower threshold. Again, is it enough? No, but come now. That's a stretch. You issue an interrogatory of list all your patents. So they list 70 patents, and now you're saying that you have a free license under all 70? No, we're not saying we have a free license. We're saying that the argument that they're saying that there's an implied license cannot be used as an offense, Your Honor. I'm trying to really understand how the fact that patents were not listed at all in the Ohio litigation, were not at issue in the Ohio litigation, not before the parties in the court. Nonetheless, when suit is filed in Michigan, are subject to the Ohio settlement. Because you have to focus at the fundamental block first before we get there, and that's the product. If the same product is at issue, and then the release says, we're releasing patent infringement claims, any and all patent infringement claims. You may later discover some facts that are different than the ones we have right now that form the genesis for this patent infringement claim. It says, arising out or relating thereto. Not any and all, but arising out or relating thereto, which takes it back to the broad statements of patent, trade dress, palming off, dilution, all the trademark issues. Correct, and which are premised on, Your Honor, the allegations. What does that have to do with patents that were never in the Ohio litigation? Because you have to look at the product, too. We can't just look at the abstract of the patent infringement claim. You have to look at what's the genesis that formed that claim, and the product that formed that claim, which is what this release talks about. You look at the allegations that are the basis. Someone can come up with a new product, observe, oh, look, patent number 69 on this list of 70 is a nice little way of attaching things, and then go back and say, we can use that years later for free because we settled this litigation in Ohio years earlier. If it's still a custom shutter, yes, Your Honor. You're still entitled to, if the facts are sufficiently related, not to be directly related, but if the basis for the claim is sufficiently related to the pre-settlement action, then that's released. So what's sufficiently related? Sufficiently related is if it's the same product. This court has determined that. Any shutter? I'm sorry? Any shutter? Custom shutter, any custom shutter. Whether wrongly or rightly, Your Honor, the fact is when it's the deal they struck, and the deal they struck has been interpreted by many courts across the country, that if it's this such broad language, you can take a post. So you say it doesn't matter whether, in fact, that they liberated their entire business for the next 20 years as far as this competitor is concerned? Your Honor, that's the way it could be done. It hasn't borne that self out in the real world, but that's the way it could be interpreted because as long as you satisfy the sufficiently related aspect of it, is this claim sufficiently related to the pre-settlement agreement actions, and that is the manufacturing, sale, and offering of custom shutters, that claim is released. That's the language that's in this release here, and that's the language that courts across the country have said, sorry, if you are a party that is represented by counsel and you're negotiating, the duty falls upon you to protect yourself. It not befalls upon the party that you're releasing to have them also protect you. But Mr. Sadowski argues that the product at issue wasn't the custom shutter. It was the one-piece shutter. No, but the... The custom shutter sort of came into existence toward the very end, just prior to the time the settlement agreement was executed. I believe the facts, Your Honor, don't bear that out. The facts show that the trade set dress they were claiming about was both custom and... That's trade dress. Yes, trade dress. That's not an issue. I understand. But he claims that that's Topko's custom and one-piece shutters. No, they were... The accused products throughout the litigation were the one-piece shutters. But the trade dress they were talking about, Your Honor, was with respect, as I recall from the record, both the custom and the standard shutters, and indeed the recital to the settlement agreement says that the dispute on the trade dress was custom and single shutters. So there's an actual admission there that the custom shutters were part of the settlement agreement. It's an agreement they signed. That's trade dress, but the Michigan action is patent infringement. Is that right? Correct, Your Honor, correct. Then what does trade dress have to do with it? Because Traffix has said that any patent that relates, if you're trying to declare trade dress for a product, Traffix and this court have said you need to look at the other patents for that product. Traffix says don't shut your eyes to reality. Traffix doesn't say that if you have a trade dress case that you get an automatic patent license, for instance, or whatever else you're trying, you've been telling us. I agree, Your Honor, but it does say it's a heavy evidentiary burden. No, it says it's relevant. It says look at the evidence, and this is really what I think the district judge tried to do and what we need to look at. So I think that your position that your client has a license over the next 20 years under all 70 patents is very interesting. Well, we have indicated that it's the patents that were at issue in that law. I'm sorry. That is the way that argument can be made. Yes, Your Honor. That's the position we could take if we took that position into real life. What position are you taking? We're making the custom shutters. We're trying to not shut them down. We're trying to shut that Michigan action down. And your position is that those custom shutters are free of infringement under all 70 patents? Based upon their – I don't believe we've made that argument, Your Honor. Are there 70 patents, or was that just a hypothetical? I don't think there are 70 patents. The record says there were 70 on the list in response to the interrogatory and the deposition. But as the district court indicated, the decision there as the license doesn't relate to all 70 patents. It relates to those that are specifically applied to a custom shutter. That was why I asked whether there was any overlap in the patents in Michigan and in Ohio. And you've told us, well, those – no, but that the patents in the Michigan suit were listed in that list that was provided in response to the interrogatory. That's correct, Your Honor. They are. But that's your basis for saying that those are included. That would be a basis for saying that those are included, Your Honor. Yes. It's entirely unclear as to what products really were involved in this lawsuit. I shudder to ask, but would the complaint have helped us if it had been included in the appendix in discerning what products are involved? The complaint talks about – it talks about shutters in general, Your Honor. The complaint – excuse me. The complaint talked about these gable vents that Mr. Sadowski has shown. And the complaint also then, via the counterclaim, just talked about shutters in general. It did not draw a distinction between custom or standard shutters, which is another point that the district court relied upon in saying that, look, when you make these – that the release will cover both because there was no distinction drawn either in the complaint or in the settlement agreement itself as to the type of shutters. Also, this settlement agreement incorporates the earlier settlement agreement relating to the two patents. For the gable vents. And we don't have a copy of that in the appendix either. Does – would that shed any light on the issue that's before us? Does that agreement, for example, have any release language that is relevant to this issue? The release language is not relevant to this issue, Your Honor. Is it the same? No, it's not the same. Different release language. Yes. Not relevant. Yes. It doesn't have the – if I recall correctly, it doesn't have the prospective language that is found in the second paragraph of this release that's in front of you. Okay. It's more limited to just what happened beforehand. The issue also on comedy that's been discussed. The point to be made there is all agreed that the district court in Ohio would exercise jurisdiction of it. And indeed, the district court in Ohio had the case dispositive issue in front of it. And under any case law that's been cited, that's the key point that we have to remember is that if it's a case dispositive issue, it can take that, hold it, make the decision, and then stop the other litigation. So that's a significant factor from that standpoint. Indeed, there's a case that ATATCO has relied upon, which the Smith v. SEC case, which relies upon its own case from the Sixth Circuit that says the decision by the parties to have an entity exercise jurisdiction in this Cowden case, C-O-W-E-N, they talked about arbitration. The court says forget who filed first or filed second. Look at what the language says. And if the language says you need to go to this entity or this court, that's going to trump it. And so from a comedy perspective, it's, Your Honor, you mentioned it's a continuation. It is a continuation. Kokanen doesn't change that. Kokanen just says you have a continuation of a case, and if you want to file and enforce that settlement agreement, you need something extra. But it doesn't say it's a brand-new filed case. So the court exercised, properly exercised jurisdiction. The other thing that has to be mentioned is that Mr. Sadowski sent something about labeling. And the rules are you have to completely fulfill the condition preceded to enforcing. That would be like giving notice. In our instance, it's filing in the district court. The other thing is you have to substantially perform the consideration obligations. Now, the record, there's evidence in front of you that has said that we did label. We did color change, and we did be the main changes. But even if you took away the labeling as he contends, there's still substantial performance under AU rust proofing. And that's what- It's not a matter of performance. This was raised as a matter of contract interpretation. That if you, if your client didn't put the label on the custom shutter, that that was evidence along with other evidence of the various principles involved. That they didn't consider it as within the settlement. Your Honor, that's the argument that's been made. But then we have to look at that from a clearly erroneous standard. If the district court looked at those facts and said the record shows that Dinosaur has said- It was undisputed that it was not labeled. No, it is not undisputed. It is disputed that it was labeled. The record shows, and there's affidavits and a declaration from Dinosaur Tapco people that says they did label it. They said the one they found or the one they bought didn't have a label on it. The district court then, I mean the appellate court then has to look at it and go, is what the district court looked at so clearly erroneous based upon the record that it has on this fact? And it's not because there is actual evidence in the record that says that they labeled, they beaded, and they colored it differently. So in every- Go ahead. Just one more question. Getting back to the release in the second paragraph, the prospective language. At the very tail end of that paragraph, it says, without regard to subsequent discovery or existence of such additional or different facts pertaining to the claims, except as provided below in paragraph four herein, which I read to be paragraph five. There was a- And paragraph five deals with the estoppel and compromise of claims and talks about, should issues in the trade dress infringement and or claims of palming off, et cetera, be asserted again for whatever reason? And it goes on. It says, in effect, that you'll be in no different position had you never signed this agreement in the first place. So why is that paragraph limited to the trade dress infringement if, indeed, the release is directed to both trade dress and all patent infringement? Because the issue- That goes back to the first- That, Your Honor, goes to the concept that there were three changes that had to be done, which related to, at that time, the trade dress claim, which was what was in front of the court. I mean, which was in front of the Ohio court as the counterclaim. So what that was simply, as I understand the intent of that was, was to say if Dinosaur Building Products didn't do one of those three, they had the ability to go back in, try and enforce it. We, in turn, would retain those defenses. But the only reason being is that that's the one claim that there were some specific actions that were still required on. That's all I can glean from that, Your Honor. I don't- But one would normally think that paragraph would parallel the release language. Yes, but I believe because I understand from the- Well, not having been there, but based upon the record, Your Honor, as I understand it, the point is that that was just because those were the three changes that were required as a result of the trade dress claim to change the appearance of the shutter. Hence, what they were saying is if we didn't change it, they get to come back against us, but we, in turn, get to assert the defenses to it to see if that's even a viable trade dress component for that specific feature of the product. Okay. It aren't fully corrected. I would admit that, Your Honor. Okay. Any more questions? No. Any more questions? Okay. Thank you, Your Honor. Thank you, Mr. Rothenberg. Thank you. Mr. Sadowski. Yes, Your Honor. To respond to one point made, the complaints from the two different cases are not part of the appendix, but they are part of the attachments to the motion to stay pending appeal, if you wanted to refer to them, and they are at Exhibit D and Exhibit E to the motion. The prior settlement agreement is not part of the record on appeal. I believe that Your Honor's, Judge Lynn's, comment concerning Paragraph 5 is parallel to the release. That's another aspect of this, and that's why I'm saying that the intent of the parties with regards to the shutters was to only measure the trade dress infringement at AL 186. It talks about So you're saying basically that not only does Paragraph 4 have a typo in referring to the below Paragraph 4 instead of Paragraph 5, but maybe the typo was adding the word patent in this language in Paragraph 2. Right. It's evident from the drafting of the document that the document didn't have Paragraph 3 in it originally, so it didn't have anything to do with patents originally. Wasn't patent infringement in the original complaint? No. The patent infringement was in the original complaint for the mount block. That's correct. And then the settlement agreement was drafted in a manner that released the remaining claims, because these claims had already been resolved. And then something happened where they threw in the patent into this, quote, final release, and they inserted Paragraph 3. But that's a giant, giant difference. It's very hard, I think, to persuade anyone that nobody noticed that patents were now included. Well, I think that when Paragraph 3 was thrown in, the word patent was thrown in to address the fact that Paragraph 3 related to a patent. Now, again, we agreed to settle this case. We didn't agree to get defrauded into allowing a release of all patent claims that we have in custom shutters. How were you defrauded when you agreed to the language? Who drafted this language? Which side? They did. They did? Yeah. It's not an enormous agreement. Well, it's not so much the defrauding. How were you defrauded when you read it? Because they apparently had some designs on custom shutters that they were going to make, and we had no idea what they were. And that's where, you know, if you're going to read this language the way they want to read it, and they're reading it as a license, essentially, to all of our custom shutter patents for the rest of the extended custom shutter patents. And the district judge said, yes, that's what you agreed to. And we didn't agree to that. But that's, if you read it without the benefit of all these caveats and explanations, that's what it says. That's one, that was the interpretation that the district judge gave it. That wasn't the interpretation that the parties gave it. Well, one party did. Well, one party does now. But at the time that we bought this shutter, they didn't believe it, okay? They came up with that after they were sued on this shutter. They certainly, and maybe Mr. Rothenberger or some third-party attorney read it, but that certainly wasn't the way that the parties read it at the time that they settled the case. And the best evidence to me is this product. This is the product that we bought. We bought two of them. Neither of them has the labeling on it. We bought those products, not those specific products, but later products after the settlement to check on the labeling. And it's on all the labels for the standard-sized products. It's not, we have yet to buy a product that's the custom shutter from Dynasol that has the labeling on it. And Dynasol has two different ways they make their custom shutters. One infringes, one doesn't. But the labeling's not on either of them. So, and that all predates their arguments today or their arguments in this case. But again, those are contract interpretation arguments. And I really am at a loss as to address, you know, I mean, who gets the inferences from the facts? Was this a preliminary injunction? Was this a summary judgment? I mean, the last time, well, not the last time. One of the times I was up here in the Unisys v. Banks case, we were talking about inferences from inferences, and the summary judgment was reversed on the fact that- It was contract interpretation, not a question of fact. Well, the question of fact comes after the contract interpretation. There's questions of fact, I believe, prior to the contract interpretation, but there's also questions of fact subsequent to the contract interpretation, which the court took and ran with and found that the release applied to this product, which wasn't in existence at the time of the September 2004 settlement agreement in any way that we could see it. Okay. Any more questions? Thank you, Mr. Sadowski. Mr. Rothenberg, your case is taken under submission.